**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | |
|---|---|
| FAITH DISBENNETT, : | |
| Plaintiff, | Case No. 3:08-cv-041 |
| -vs- | District Judge Thomas M. Rose<br>Chief Magistrate Judge Michael R. Merz |
| MILLCRAFT PAPER COMPANY,<br>   dba MILLCRAFT GROUP, | |
| Defendant. : | |

**REPORT AND RECOMMENDATIONS**

This case is before the Court on Defendant Millcraft Paper Company, dba Millcraft Group's ("Millcraft") Motion for Judgment on the Pleadings made pursuant to Fed.R.Civ.P. 12(c). (Doc. 15). The parties have fully briefed the issues, (*Id.*, Doc. 16, 17), and the matter is ripe for report and recommendations.

Plaintiff Faith Disbennett ("Ms. Disbennett") brought this action against Millcraft in the Montgomery County Court of Common Pleas alleging disability discrimination in violation of Ohio Revised Code §§ 4112.02, 4112.99 and the Americans with Disabilities Act, 42 U.S.C. § 12101 ("ADA"). *Disbennett v. Millcraft Paper Company*, No. 08-0265 (Jan. 10, 2008) (Doc. 1, Ex. A thereto). Ms. Disbennett also brought claims for violations of the Family Medical Leave Act, 29 U.S.C. § 2601 ("FMLA") and the intentional infliction of emotional distress. *Id.* Millcraft removed

the action to this Court on the basis of federal subject matter jurisdiction. *Id.* Millcraft's present Motion followed.

In ruling on a Fed.R.Civ.P. 12(c) motion for judgment on the pleadings, the Court must accept all the factual allegations of the complaint as true. *Commercial Money Center, Inc. v. Illinois Union Insurance Co.,* 508 F.3d 327, 336 (6th Cir. 2007); *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 511-12 (6th Cir. 2001). The Court must then decide whether the moving party is entitled to judgment as a matter of law. *Commercial Money Center,* 508 F.3d at 336; *Lavado v. Keohane,* 992 F.2d 601, 605 (6th Cir. 1993). This is the same standard applied in deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *EEOC v. J. H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001).

A court's consideration of a motion for judgment on the pleadings under Fed.R.Civ.P. 12(c) is limited to the pleadings themselves. *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 11-12 n.2 (6th Cir. 1987). If necessary, the court may consider other documents only where such documents are referred to in the pleadings and are integral to the claims without converting a motion to dismiss into one for summary judgment. *Commercial Money Center,* 508 F.3d at 335-36 (citation omitted). Similarly, when a defendant attaches to a motion for judgment on the pleadings documents which are referenced in but not attached to the complaint, the court may consider the motion as being made under Rule 12(c), rather than converting it to a motion for summary judgment. *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (citation omitted).

In light of the above-cited law, in considering Millcraft's present Motion the Court may not consider those documents which Ms. Disbennett submitted in opposition to Millcraft's Motion. Those documents, which include the affidavit of one Roseann Ruff, apparently Ms.

Disbennett's former co-worker at Millcraft, what is purportedly a typed transcript made from a conversation Ms. Disbennett had with her supervisor at Millcraft, Tom Perchan, and which Ms. Disbennett apparently secretly taped, and several documents which are purportedly parts of Ms. Disbennett's medical records, are not referred to in the Complaint.[1]

Although the Court is arguably permitted to consider the documents which Millcraft submitted in support of its present Motion because those documents are referenced in Ms. Disbennett's Complaint, the Court finds it need not consider any of those documents in order to reach its conclusions as to Millcraft's Motion.

For purposes of the present Motion facts of this case, based on Ms. Disbennett's Complaint and the documents which Ms. Disbennett attached thereto, are as follows.

Ms. Disbennett began her employment with Millcraft in or about 1990. On or about February 6, 2006, Ms. Disbennett was arrested for drug-related offenses and she was eventually sentenced to a term of probation. Millcraft was aware of Ms. Disbennett's substance abuse problem. On October 20, 2006, Ms. Disbennett was arrested and jailed for violating the terms of her probation and she remained in custody until November 1, 2006.

On October 30, 2006, Ms. Disbennett's husband called Millcraft and left a message that Ms. Disbennett would not be available to work until November 1, 2006, due to the illness of her mother-in-law. Ms. Disbennett failed to report to work on November 1, 2006, and her supervisor, Tom Perchan, attempted to contact her. However, he was unable to do so. Ms. Disbennett's husband called Mr. Perchan on November 2, 2006, and informed Mr. Perchan that he (the husband) had lied and that Ms. Disbennett had not been attending to an ill family member but rather she

---

[1] In addition, there are arguably questions as to whether the submitted documents would be proper evidence.

missed work because she was in jail because she had been arrested for violating her probation.

Also on or about November 2, 2006, Ms. Disbennett requested a medical leave of absence to afford her time to deal with her bipolar and substance abuse issues. Mr. Perchan denied Ms. Disbennett's request. In a subsequent conversation with Theresa Matrisciano, Millcraft's Director of Human Resources, Ms. Disbennett confirmed that she had not been at work because she had been in jail for violating her probation. Ms. Matrisciano instructed Ms. Disbennett not to return to work until further notice.

On or about November 8, 2006, Ms. Disbennett returned to Millcraft at which time Mr. Perchan presented her with a disciplinary Agreement. Mr. Perchan advised Ms. Disbennett that she would be permitted to return to work after she signed the Agreement and also obtained a "fit for duty" letter from her physician. Ms. Disbennett requested that she be allowed to review the Agreement with her spouse and her physician but that request was denied. In addition, Ms. Disbennett again requested a medical leave of absence in order to deal with her bipolar disorder and substance abuse disorder which request Mr. Perchan denied. Ms. Disbennett signed the agreement and provided the "fit for duty" letter from her physician.

The Agreement provided in part that Ms. Disbennett would participate in a drug/alcohol treatment process and undergo random drug testing. Ms. Disbennett participated in the substance program. However, on or about January 18, 2007, Ms. Disbennett failed to pass a drug test and Millcraft terminated her employment on or about January 25, 2007. This action followed.

**Disability Discrimination**

Plaintiff alleges that Millcraft discriminated against her on the basis of her alleged

4

disabilities of bipolar disorder and substance abuse and in violation of the ADA as well as Ohio state law when it terminated her employment.

Because "[t]he federal Americans with Disabilities Act ("ADA") is similar to the Ohio handicap discrimination law[,] .... [w]e can look to regulations and cases interpreting the federal Act for guidance in our interpretation of Ohio law". *Wysong v. Dow Chemical Co.,* 503 F.3d 441, 450 (6th Cir. 2007), citing *City of Columbus Civil Serv. Comm'n v. McGlone,* 82 Ohio St.3d 569, 573 (1998).

The ADA prohibits an employer from discriminating against "a qualified individual with a disability because of the disability" in regard to job application procedures, the hiring, advancement, or discharge or in the terms and conditions of employment. 42 U.S.C. §12112. The terms disability and qualified individual with a disability do not include individuals currently engaging in the illegal use of drugs when the covered entity acts on the basis of such use. 42 U.S.C. § 12114(a); 29 C.F.R. § 1630.3(a); see also, O.R.C. § 4112.02(Q)(1)(a)(excluding from the definition of "disability" any "disorder or condition ... caused by an illegal use of any controlled substance by an employee ... if an employer . . . acts on the basis of that illegal use.") This exclusion, however, does not apply to an individual who "[h]as successfully completed a supervised drug rehabilitation program and is not longer engaging in such use." 29 C.F.R. § 1620.3(b). On the other hand, the ADA provides a "safe harbor" for individuals who: (1) have successfully completed a supervised rehabilitation program and are no longer engaged in the illegal use of drugs; (2) are participating in a supervised rehabilitation program and are no longer engaged in the illegal use of drugs; or (3) are erroneously regarded as engaging in the illegal use of drugs. 42 U.S.C. § 12114(b); 29 C.F.R. § 1630.3(b). The statute expressly permits employers to adopt and administer reasonable

policies or procedures, including drug testing, to ensure that employees who have completed or are participating in a rehabilitation program are no longer engaging in the illegal use of drugs. 42 U.S.C. § 12114(b); 29 C.F.R. § 1630.3(b).

Federal regulations provide that the term "currently engaging" is not intended to be limited to the use of drugs on the day of, or within a matter of days or weeks before, the employment action in question. *Johnson v. City of Columbus,* No. C-2-99-531, 2001 WL 605040, *4 (S.D.Ohio, May 29, 2001), citing 29 C.F.R. § 1630.3. Rather, the provision is intended to apply to the illegal use of drugs that has occurred recently enough to indicate that the individual is actively engaged in such conduct. *Id.*

Ms. Disbennett admits in her Complaint that she did not pass the January 18, 2007, drug test. Complaint at ¶¶ 17, 18. (Doc. 3). In addition, in her Memorandum in Opposition of [sic] Defendant's Motion for Judgment on the Pleadings, Ms. Disbennett admits that "she had a brief relapse which resulted in a failed random drug test and her ultimate termination a few days later on January 25, 2007." (Doc. 16 at 5).

As noted above, the protections of the ADA do not extend to individuals who are currently engaging in the illegal use of drugs when the covered entity acts on the basis of such use. *Johnson,* 2001 WL 605040 at *6. Ms. Disbennett admits that she had a relapse with respect to her illegal drug use, that she failed the January, 2007, drug test, and that as a result, Millcraft terminated her employment. Millcraft is entitled to judgment as a matter of law on Ms. Disbennett's discrimination claims under the ADA and Ohio state law.

### **FMLA**

The FMLA was enacted to "balance the demands of the workplace with the needs

6

of families, ... to entitle employees to take reasonable leave for medical reasons ... in a manner that accommodates the legitimate interests of employers." 29 U.S.C. §2601(b).

To invoke the protection of the FMLA., an employee must provide notice and a qualifying reason for requesting the leave. *Brahm v. JH Properties, Inc.,* 149 F.3d 517, 523 (6th Cir. 1998)(citation omitted). If the need for FMLA leave is foreseeable, the employee is required to make a reasonable effort to schedule the need for the leave so as not to disrupt unduly the employer's operations and shall provide the employer with not less than thirty (30) days notice. 29 U.S.C. §2612(e)(2). If the date of the need for the leave is to begin in fewer than thirty (30) days, the employee shall provide such notice as soon as practicable. *Id.*

While the employee need not actually mention the FMLA by name, the critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition. *Brahm,* 149 F.3d at 523 (citation omitted). The burden then shifts to the employer to determine whether leave was sought under the Act and to obtain any additional information. *Carpenter v. Refrigeration Sales Corp.*, 49 F.Supp.2d 1028, 1030 (N.D.Ohio 1999); *see also, Hammon v. DHL Airways, Inc.,* 165 F.3d 441, 450 (6th Cir. 1999).

As noted above, Ms. Disbennett's husband called Millcraft on October 30, 2006, and left a message that Ms. Disbennett not be available to work on until November 1, 2006, due to her mother-in-law's illness. However, as also noted above, Mr. Disbennett called Mr. Perchan on November 2, 2006, and admitted to Mr. Perchan that he (Mr. Disbennett) had lied and that Ms. Disbennett had not been attending to an ill family member but rather she was in jail. Even assuming that the calls which Mr. Disbennett made to Millcraft on October 30, 2006, and November 2, 2006,

on Ms. Disbennett's behalf were ostensibly requests for FMLA leave, incarceration, the true reason for Ms. Disbennett's absences from work, is simply not a qualifying reason for which an employer is required to give FMLA leave. See *Jeremy v. Northwest Ohio Development Center,* 33 F.Supp.2d 635 (N.D. Ohio 1999), *aff'd* 210 F.3d 372 (6th Cir. 2000)(table).[2]

Millcraft is entitled to judgment on Ms. Disbennett's FMLA claim.

### **Intentional Infliction of Emotional Distress**

Ms. Disbennett's final claim against Millcraft is one for intentional infliction of emotional distress. Essentially, Ms. Disbennett alleges that Millcraft's termination of her employment caused her severe emotional distress. Of course, Ms. Disbennett's claim for intentional infliction is a question of state law brought pursuant to this Court's supplemental jurisdiction and therefore Ohio law applies to the claim.

The Ohio Supreme Court recognized the tort of intentional infliction of emotional distress in *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen & Helpers of America*, 6 Ohio St.3d 369 (1983), abrogated on other grounds in *Welling v. Weinfeld,* 113 Ohio St.3d 464 (2007). In *Yeager,* the court articulated the requirements for a successful claim, saying that "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." *Yeager*, 6 Ohio St.3d at 374. Thus, in order to state a claim for intentional infliction of emotional distress in Ohio, a plaintiff must allege that: (1) defendants intended to cause emotional distress, or knew or should have known that their actions could result in plaintiff's serious emotional distress; (2) defendants' conduct was extreme and outrageous; (3)

---

[2] The citation for the Sixth Circuit's full written opinion is 2000 WL 353524.

defendants' actions proximately caused plaintiff's emotional injury; and (4) plaintiff suffered serious emotional anguish. *Miller v. Currie,* 50 F.3d 373, 377 (6th Cir. 1995)*, citing Hanly v. Riverside Methodist Hosps.,* 78 Ohio App.3d 73 (10th Dist. 1991), citing *Pyle v. Pyle,* 11 Ohio App.3d 31 (8th Dist. 1983). A plaintiff may establish the tort only if "the conduct has been so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Godfredson v. Hess & Clark, Inc.,* 173 F.3d 365, 376 (6th Cir. 1999), citing *Yeager, supra.* To say that the Ohio courts narrowly define "extreme and outrageous conduct" would be somewhat of an understatement. *Baab v. AMR Services Corp.,* 811 F.Supp.1246, 1269 (N.D.Ohio 1993)(citation omitted). An employee's termination, even if based upon discrimination, does not rise to the level of "extreme and outrageous conduct" without proof of more. *Godfredson*, 173 F.3d at 376.

As noted above, Ms. Disbennett admits in her Complaint that she did not pass the January 18, 2007, drug test and that her relapse resulted in the failed random drug test and ultimately, her termination. Even in light of Ms. Disbennett's " fragile mental state", Doc. 16 at 14, it simply was not "extreme and outrageous" conduct for Millcraft to terminate Ms. Disbennett's employment for engaging in the use of illicit drugs.

Millcraft is entitled to judgment as a matter of law on Ms. Disbennett's claim for intentional infliction of emotional distress.

**Conclusion**

It is therefore recommended that Defendant Millcraft Paper Company dba Millcraft Group's Motion for Judgment on the Pleadings, (Doc. 15) be granted and that judgment be entered in favor of Defendant and against Plaintiff Faith Disbennett dismissing the within Complaint with

9

prejudice.

August 27, 2008.

                     s/ **Michael R. Merz**
                   Chief United States Magistrate Judge

J:\Documents\Disbennett v. Milcraft 12(c) R&R.wpd

NOTICE REGARDING OBJECTIONS

    Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (c), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).